**Sarah GORIN, Bern Hinckley, Chelsea R. Kesselheim, John M. Faunce, Linda Kirkbride, Jesse Guidry, Verna Crusch, Ernest A. Roybal, Chris Plant, Wayne E. Morrow, Larry W. McGonigal, and Teri J. Royer, Plaintiffs,**

**Harriett Elizabeth "Liz" Byrd, Edith V. Garcia, Pat Hacker, Fred Harrison, Shirley J. Humphrey, Patrick F. O'Toole, Scott J. Ratliff, Bill Vasey, and Carol Watson, Intervening Plaintiffs,**

v.

**Kathy KARPAN, Wyoming Secretary of State in her individual official capacity and as a member of the State Canvassing Board, Michael J. Sullivan, Governor of the State of Wyoming in his individual official capacity and as a member of the State Canvassing Board, David Ferrari, Wyoming State Auditor in his individual official capacity and as a member of the State Canvassing Board, and Stan Smith, Wyoming State Treasurer in his individual official capacity and as a member of the State Canvassing Board, Defendants.**

No. 91–CV–0054–K.

United States District Court, D. Wyoming.

April 6, 1992.

Steven F. Freudenthal of Herschler, Freudenthal, Salzburg, Bonds & Rideout, P.C., Cheyenne, Wyo. (Hardy H. Tate, Sheridan, Wyo., William John Disney, Douglas, Wyo., with him on the briefs), for plaintiffs.

Ford T. Bussart of Greenhalgh, Bussart, West & Rosetti, P.C., Rock Springs, Wyo., Lisa A. Botham, Green River, Wyo., for intervening plaintiffs.

Mark Braden and Marc D. Flink of Baker & Hostetler, Denver, Colo. (Joseph B. Meyer, Wyoming Atty. Gen., Clinton D. Beaver, Wyoming Sr. Asst. Atty. Gen., Thomas B. Evans of Baker & Hostetler, Denver, Colo., with them on the briefs), for defendants.

Peter C. Maxfield, Laramie, Wyo., on the brief, for amicus curiae Wyoming Democratic Party.

Douglas W. Chamberlain, pro se.

Karen J. Budd of Dray, Madison & Thomson, P.C., Cheyenne, Wyo., on the brief, for amicus curiae Representative Dan S. Budd, Sublette County, and Representative Eli Bebout, Fremont County.

Before BRORBY, Circuit Judge, BRIMMER, Chief Judge, and JOHNSON, District Judge.

BRORBY, Circuit Judge.

Today this court is presented with a single issue: the constitutionality of the Wyoming Legislature's "new" apportionment plan (1992 Apportionment Act),[1] enacted in response to our previous decision holding Wyoming's 1991 Legislative Reapportionment Act[2] unconstitutional.[3] We hold the 1992 Apportionment Act complies with the constitutional guidelines set forth in our opinion dated October 15, 1991.

## I.

Last October we held that the 1991 Wyoming Legislative Reapportionment Act constituted invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. The overwhelming departure from the substantial equality standard rendered the 1991 Act facially invalid.[4] *Gorin*, 775 F.Supp. at 1440. Moreover, the legislature's policy to preserve regional representation by preserving county boundaries as election district boundaries neither necessitated nor adequately justified the substantial population variance created by the 1991 Act. We therefore returned the reapportionment task to the Wyoming Legislature with instructions to fashion a new plan in accordance with the following constitutional guidelines:

1. Without exception, the legislature must make substantial population equality its overriding objective.

2. The State will have to justify any population deviation among election districts which exceeds 10%. Any reapportionment plan must strive to achieve substantial equality of population among the various election districts so that the vote of any one citizen is approximately equal

---

1. Original Senate File No. 49, Enrolled Act No. 1, Fifty–First Legislature of the State of Wyoming, 1992 Special Session.

2. Original House Bill 259, Enrolled Act No. 81, House of Representatives of the Fifty–First Legislature of the State of Wyoming, 1991 General Session.

3. *Gorin v. Karpan*, 775 F.Supp. 1430 (D.Wyo. 1991).

4. The maximum percentage range of population deviation was 83% in the House of Representatives and 58% in the Senate. *Gorin*, 775 F.Supp. at 1434–35.

in weight to that of every other citizen. Should this deviation in population among election districts exceed 10%, the burden on the State to articulate and justify its nonpopulation considerations is heavy. The Constitution does not treat lightly the dilution of the vote.

3. An undefined limit exists beyond which the State cannot justify population deviations among election districts.

4. Within the justifiable range of population deviation, the State must demonstrate a rational policy supported by legitimate considerations in the effectuation of that policy. We reemphasize that the legislature may legitimately pursue its desire to assure each county representation as a county. In fact, it is our hope that the legislature will be able to fashion a reapportionment plan that fulfills the citizens' needs for representation in each individual county. What the legislature *may not do*, however, is elevate that pursuit above the pursuit of substantial equality among individual voters. Reapportionment according to regional interests, if achieved at the expense of significant intrusion upon individual voting rights, is intolerable. Counties do not stand on equal constitutional ground with citizens at the ballot box. The Constitution commands that we not exalt groups of citizens by giving to them inordinate voting power.

*Gorin,* 775 F.Supp. at 1446.

The Wyoming Legislature took this task to heart. We appreciate the enormity and inherent difficulty of legislative reapportionment and we commend the Wyoming Legislature for its efforts. On February 21, 1992, Governor Sullivan signed the 1992 Legislative Apportionment Act into law. The 1992 Act is best characterized as a "nested" plan comprised of thirty single-member Senate election districts and sixty single-member House election districts. Each of the Senate Legislative Districts is formed by combining two adjacent House Legislative Districts.

The ideal population per senator under the new thirty-member Senate plan is 15,120. Senate Legislative District 26, the most heavily populated, contains 15,858 people with a relative deviation of −4.880% from the ideal. Senate Legislative District 14, the most lightly populated, contains 14,406 people with a relative deviation of + 4.722% from the ideal. The range of relative population deviation for the Senate is 9.602%.

The ideal population per representative under the new sixty-member House plan is 7,560. House Legislative District 33, the most heavily populated, contains 7,931 people with a relative deviation of −4.907% from the ideal. House Legislative District 31, the most lightly populated, contains 7,177 people with a relative deviation of + 5.066%. The range of relative population deviation for the House is 9.973%.

The State of Wyoming asserts the 1992 Apportionment Act is prima facie valid. Plaintiffs and Intervening Plaintiffs concede this fact.

The ten percent de minimis rule provides the state need only justify relative population deviation ranges greater than 10%. As we stated in our earlier opinion, "[a]n apportionment plan creating a maximum population deviation less than 10% is considered to be 'minor,' and therefore may not substantially dilute the weight of individual votes so as to deny individuals fair and effective representation." *Gorin,* 775 F.Supp. at 1438 (citing *White v. Regester,* 412 U.S. 755, 764, 93 S.Ct. 2332, 2338, 37 L.Ed.2d 314 (1973)); *see also Brown v. Thomson,* 462 U.S. 835, 842, 103 S.Ct. 2690, 2696, 77 L.Ed.2d 214 (1983). The maximum ranges of deviation under the 1992 plan clearly fall below this threshold. We therefore conclude the 1992 Act has achieved the overriding constitutional objective of substantial equality of population among the various legislative districts—the vote of any citizen is approximately equal in weight to that of any other citizen in Wyoming. Accordingly, we hold the new act constitutional, deny any injunctive relief and relinquish jurisdiction over this matter.

## II.

From the beginning, this court has remained cognizant of the importance of leg-

islative apportionment to Wyoming citizens. For this reason we have extended all parties and interested citizens every opportunity to voice their concerns. We have heard those concerns by allowing intervention and receiving amicus briefs. Specifically, we acknowledge the two major problem areas readily apparent to anyone evaluating the 1992 Apportionment Act: 1) Some legislative districts arguably appear to have been "stacked" or "split" in order to weight certain districts in favor of a particular party (*see, e.g.,* Senate Districts 5 and 8 in Laramie County, and Senate Districts 9 and 10 in Albany County together with the corresponding House Districts), and 2) the concept of county/community integrity arguably appears to have been largely ignored in Goshen County (House Districts 2, 3, 4, and 5); Sublette County (House Districts 20 and 22); and House District 16 which stretches from the northwest boundary of Albany County across the top of Carbon County, picks up a portion of the City of Rawlins, extends west to the outskirts of Rock Springs in Sweetwater County, drops down to the Wyoming–Colorado boundary with its westernmost boundary at Fontenelle Reservoir and its northern boundary beyond Atlantic and Jeffrey Cities in Fremont County.

While we adhere to the view that legislative apportionment is primarily a political and legislative process and that the legislature is by far the best institution to identify and reconcile state policies within constitutional guidelines, we nevertheless empathize with the dissatisfied voters in the "problem" areas. We, too, suspect that eleventh-hour gerrymandering prevented the consideration or passage of an alternative plan(s) which would have better met county/community objectives and still satisfied the substantial equality mandate. However, this court cannot rule simply on the political wisdom of the 1992 Apportionment Act or any component thereof. We cannot act absent a constitutional infirmity "supported by evidence of continued frustration of the will of a majority of the voters or effective denial to a minority of voters of a fair chance to influence the political process." *Davis v. Bandemer,*

478 U.S. 109, 133, 106 S.Ct. 2797, 2811, 92 L.Ed.2d 85 (1986). "[U]nconstitutional discrimination occurs only when the electoral system is arranged in a manner that will consistently degrade a voter's or a group of voters' influence on the political process as a whole." *Id.* at 132, 106 S.Ct. at 2810. Plaintiffs and Intervening Plaintiffs concede they are unable to offer proof of such unconstitutional discrimination at this time.

Wyoming citizens must recognize and appreciate that it is the legislature's responsibility to enact our laws, it is the court's responsibility to ensure the constitutionality of those laws, and it is the voters' responsibility to hold state legislators accountable for their actions. The 1992 Apportionment Act was passed by a majority of the Wyoming legislature—it represents the collective wisdom of those elected to represent us. At present, this court finds no evidence of constitutional infirmity. The political wisdom of the legislative action can only be judged by Wyoming citizens who now exercise substantially equal power at the ballot box.

Judgment will be entered accordingly.

BRIMMER, Chief Judge, concurring.

I concur in the opinion of the majority because the record before us (which doesn't have the strength of Pablum) leaves no alternative. But, concurrence should not be construed as even half-hearted approval of the 1992 Apportionment Act, for the Wyoming State Legislature was mighty careless of justice, to say the very least. It correctly met the constitutional guidelines of our 1991 decision, as there is no population deviation among election districts which exceeds 10%, but in doing so it closed its eyes to the geographic realities and the practical needs of vast areas of our State by its late-night passage of the infamous Bodine Amendment which was deliberately indifferent to the voters of Goshen, Carbon, Fremont and Sublette Counties.

An amendment ordinarily redresses an unfairness or injustice by making such corrections as will right an abuse, but the Bodine Amendment created abuses and imbalances by the carload. Instead of creat-

ing fair and equitable election districts which may have required legislative justification of deviations in excess of 10%—not an impossible task—the Legislature created a monstrosity, House District 16, which is nearly 200 miles long and combines portions of Carbon, Fremont and Sweetwater Counties in a manner that is blind to the geographical barriers, the roads and the natural trade and commerce practicabilities of the vast diverse regions within it. The Legislature failed to ask if it was fair and just to all concerned; instead it blindly ploughed ahead and effectively disfranchised most of the electors of that area. It didn't take time to do a good job, only one good enough for government work.

Political maneuvering also abounds: in Goshen County, the Hispanic minorities in South Torrington were placed with and to be smothered by the Wheatland Republicans; the rural Republican votes in Carbon County were put in with and to be totally outweighed by the Sweetwater Democratic sector; in Fremont County the voters of the Sweetwater Valley were kneaded in with a Sweetwater County Democratic stronghold with which they have no real or apparent ties; and Sublette County was gutted in a split that put half its Republican vote in with the Democratic region in Kemmerer, and the rest in with Sweetwater County. This smacks of political gerrymandering. But the parties who could prove it aren't before us and haven't been heard, and the judicial standards for proving such unfairness are nebulous. The plurality in *Davis v. Bandemer* declared that actual discriminatory effect against a voter population is a necessary component for proving political gerrymandering. 478 U.S. at 139–40, 106 S.Ct. at 2813–14. There is no proof before this Court of any such effect, and, accordingly, a claim of gerrymandering is presently unsupportable. Hopefully, there may be another day in another case, properly brought by the aggrieved electors of the aforementioned areas, in which injustice may be righted.

The plan is today judged by this Court to be constitutionally sound according to the numbers, but the Wyoming citizens will be the final judges of its ultimate destiny. "In a democratic society like ours, relief must come through an aroused popular conscience that sears the conscience of the people's representatives." *Baker v. Carr,* 369 U.S. 186, 270, 82 S.Ct. 691, 739, 7 L.Ed.2d 663 (1962) (Frankfurter, J., dissenting). I hope that aroused voters will properly sear and baste those who drafted, promulgated and passed the Bodine Amendment; they richly deserve it.